AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

Southern District of California

FILED

MAR 2 2 2018

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                          DEPUTY

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
) Case No.
Apple iPhone Cellular Telephone )
Model: A1784 )
IMEI: 353810089011741 )

# 18MJ1330

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

SEE ATTACHMENT A
(INCORPORATED HEREIN)

located in the ___ Southern ___ District of ___ California ___, there is now concealed *(identify the person or describe the property to be seized)*:

SEE ATTACHMENT B
(INCORPORATED HEREIN)

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC §§ 952, 960, and 963 | Importation and conspiracy to import Methamphetamine. |

The application is based on these facts:

SEE AFFIDAVIT OF SPECIAL AGENT JOSEPH MAHE

☑ Continued on the attached sheet.

☐ Delayed notice of ___ days (give exact ending date if more than 30 days: ___ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Joseph E. Mahe, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 3/22/18

_____
*Judge's signature*

City and state: San Diego, CA

Honorable Barbara L. Major, U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT A

PROPERTY TO BE SEARCHED

The following property is to be searched:

Apple iPhone Cellular Telephone
Model: A1784
IMEI: **353810089011741**
(**Target Device**);

**Target Device is** currently in the possession of the Department of Homeland Security, 2255 Niels Bohr Court, San Diego, California, 92154, in the Southern District of California.

## ATTACHMENT B-1

### ITEMS TO BE SEIZED

Authorization to search the cellular/mobile telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone for evidence described below. The seizure and search of the cellular/mobile telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular/mobile telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of November 4, 2017 to February 5, 2018:

a.      tending to indicate efforts to import methamphetamine, or some other controlled substances from Mexico into the United States, or possess and/or transport with the intent to distribute controlled substances within the United States;

b.      tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine, or some other controlled substances from Mexico into the United States, or possession and/or transportation with the intent to distribute controlled substances within the United States;

c.      tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine, or some other controlled substances from Mexico into the United States, or possession and/or transportation with the intent to distribute controlled substances within the United States;

d.      tending to identify travel to or presence at locations involved in the importation of methamphetamine, or some other controlled substances from Mexico into the United States, or possession and/or transportation with the intent to distribute controlled substances within the United States, such as stash houses, load houses, or delivery points;

e.      tending to identify the user of, or persons with control over or access to, the subject telephone; and/or

f.      tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

**which are evidence of violations of 21 U.S.C. §§ 952, 960, and 963.**

# AFFIDAVIT

I, Joseph Mahe, Special Agent with the Department of Homeland Security (DHS), Homeland Security Investigations (HIS), being duly sworn, hereby state as follows:

## INTRODUCTION

1.      I make this affidavit in support of an application for a warrant to search the following electronic device, as further described in Attachment A, and seize evidence of crimes, specifically, violations of Title 21, United States Code, Sections 952, 960 and 963, as more particularly described in Attachment B:

        a.      Apple iPhone Cellular Telephone
                Model: A1784
                IMEI: **353810089011741**
                (**Target Device**)

This search supports an investigation and prosecution of Antonio Garcia-Herrera ("GARCIA") for the crimes mentioned above.   A factual explanation supporting probable cause follows.

2.      Customs and Border Protection Officers ("CBPO") seized the **Target Device** from GARCIA at the time of his arrest for importation of methamphetamine into the U.S. from Mexico on February 4, 2018.  The **Target Device** is currently in the possession of DHS and stored in the seized property vault at 2255 Niels Bohr Court, San Diego, California, 92154, in the Southern District of California.

3.      Based on the information below, there is probable cause to believe that a search of the **Target Device** will produce evidence of the aforementioned crimes, as described in Attachment B.

4.      The information contained in this affidavit is based upon my experience and training, consultation with other federal, state, and local law enforcement agents. The evidence and information contained herein was developed from interviews and my review of documents and evidence related to this case. Because this affidavit is made

for the limited purpose of obtaining a search warrant for the **Target Device**, it does not contain all of the information known by me or other federal agents regarding this investigation, but only contains those facts believed to be necessary to establish probable cause.

## EXPERIENCE AND TRAINING

5.      I am a Special Agent with the HSI and have been so employed since October 2010.  Prior to working for HSI, I was employed as a United States Customs and Border Protection ("CBP") Officer from May 2006 to October 2010.  In preparation for my duties as a special agent and CBP officer, I completed the Federal Law Enforcement Training Center Investigator Training Program, the United States Immigration and Customs Enforcement Special Agent Training, the Customs and Border Protection Integrated Training Program, Basic Inadmissibility Secondary Program and the Passenger Analysis Program.

6.      I am currently assigned to the Deputy Special Agent in Charge San Ysidro, California, Commercial Fraud Group.  As a Special Agent assigned to the commercial fraud group, I investigate violations pertaining to customs trade fraud, intellectual property rights, health and safety, smuggling of goods into the United States, money laundering, and narcotics smuggling. During these investigations, I have used, and assisted in the use of, many various kinds of investigative techniques, including the use of cooperating informants, live surveillance, the issuance of grand jury and administrative subpoenas, financial analysis, toll analysis, title III wire-intercepts, the search of electronic storage devices and interviews of witnesses, victims and defendants.  Additionally, in 2016 and 2017, I provided trainings to HSI special agents, CBP officers and state and local law enforcement officers in California, New York and Washington D.C. on investigative strategies associated to trade fraud and intellectual property rights investigations.

7.      Through the course of my training, investigations, and conversations with other law enforcement personnel, I am aware that it is a common practice for narcotics

smugglers to work in concert with other individuals and to do so by utilizing cellular telephones, pagers and portable radios to maintain communications with co-conspirators in order to further their criminal activities. Those involved in conspiracies to smuggle and traffick narcotics generate many types of evidence including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel and payment, names, photographs, text messaging (via SMS or other applications), and phone numbers of co-conspirators. For example, load drivers smuggling controlled substances across the border are typically in telephonic contact with co-conspirators immediately prior to and following the crossing of the load vehicle, at which time they receive instructions on how to cross and where and when to deliver the controlled substance.

8.      In preparing this affidavit, I have conferred with other agents and law enforcement personnel who are experienced in the area of narcotics investigations, and the opinions stated below are shared by them. Further, I have personal knowledge of the following facts, or have had them related to me by persons mentioned in this affidavit.

9.      Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics smuggling investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

a.      Drug smugglers will use cellular telephones because they are mobile and they have instant access to telephone calls, text, web, and voice messages.

b.      Drug smugglers will use cellular telephones because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit.

c.      Drug smugglers and their accomplices will use cellular telephones because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations.

d.    Drug smugglers will use cellular telephones to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo.

e.    Drug smugglers will use cellular telephones to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of checkpoints and border crossings.

f.    Drug smugglers and their co-conspirators often use cellular telephones to communicate with load drivers who transport their narcotics and/or drug proceeds.

g.    The use of cellular telephones by conspirators or drug smugglers tends to generate evidence that is stored on the cellular telephones, including, but not limited to emails, text messages, photographs, audio files, call logs, address book entries, IP addresses, social network data, and location data.

10.    Subscriber Identity Module (SIM) Cards, also known as subscriber identity modules, are smart cards that store data for GSM cellular telephone subscribers. Such data includes user identity, location and phone number, network authorization data, personal security keys, contact lists and stored text messages. Much of the evidence generated by a smuggler's use of a cellular telephone would likely be stored on any SIM Card that has been utilized in connection with that telephone.

11.    Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics smuggling investigations, and all the facts and opinions set forth in this affidavit, I know that cellular/mobile telephones can and often do contain electronic records, phone logs and contacts, voice and text communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone. Specifically, I know based upon my training, education, and experience investigating these conspiracies that searches of cellular/mobile telephones yields evidence:

a.   tending to indicate efforts to import methamphetamine, or some other controlled substances from Mexico into the United States, or possess and/or transport with the intent to distribute controlled substances within the United States;

b.   tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine, or some other controlled substances from Mexico into the United States, or possession and/or transportation with the intent to distribute controlled substances within the United States;

c.   tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine, or some other controlled substances from Mexico into the United States, or possession and/or transportation with the intent to distribute controlled substances within the United States;

d.   tending to identify travel to or presence at locations involved in the importation of methamphetamine, or some other controlled substances from Mexico into the United States, or possession and/or transportation with the intent to distribute controlled substances within the United States, such as stash houses, load houses, or delivery points;

e.   tending to identify the user of, or persons with control over or access to, the subject telephone; and/or

f.   tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

**FACTS SUPPORTING PROBABLE CAUSE**

12.   On February 4, 2018, at approximately 7:00 p.m., GARCIA, a United States citizen, applied for permission to enter into the United States from Mexico through the San Ysidro, California, Port of Entry ("POE") vehicle primary lane number eleven, in the Southern District of California.   GARCIA was the driver and sole occupant of a grey 2008 Volkswagen Rabbit bearing California license plates ("the vehicle").

13.    CBPO A. Sandoval was assigned to the vehicle primary lane number 11 at the San Ysidro POE.  GARCIA presented a valid U.S. passport card as identification to CBPO Sandoval.  CBPO Sandoval asked GARCIA if he had anything to declare and GARCIA responded with two negative Customs declarations.  GARCIA stated he was going to National City, CA.

14.    CBPO Sandoval proceeded to inspect the trunk of GARCIA's vehicle.  He opened the rear hatch and lifted the carpeted spare tire cover.  He discovered saran wrapped packages with a white material inside.  CBPO Sandoval then sent the vehicle through to secondary.

15.    CBPO L. Manis inspected the vehicle with her Narcotics and Concealed Human Detection Canine.  The Canine alerted to the rear undercarriage of the vehicle near the area that CBPO Sandoval discovered the packages.

16.    CBPO Vasquez conducted a Z-Portal inspection of the vehicle.  CBPO Vasquez observed anomalies in the trunk cargo area of the vehicle.

17.    CBPOs removed 19 plastic wrapped packages from the spare wheel compartment in the rear of the vehicle.  The 19 packages weighed approximately 13.4 kilograms and field-tested positive for methamphetamine.

18.    GARCIA was arrested, waived his Miranda Rights and agreed to speak with Agents.  He denied knowledge of the narcotics in the vehicle, and said that he had driven to Mexico to visit with friends.  When he was spending time with his friends, a friend borrowed his vehicle to go to the store.  GARCIA also stated that the $2,482 dollars that were in his possession was his rent money, but he had taken it with him to Mexico because he thought he was going to rent motorcycles with his friends.

19.    I know that recent calls made and received, telephone numbers, contact names, electronic mail (e-mail) addresses, appointment dates, text messages, pictures and other digital information are stored in the memory of the **Target Device,** which may identify other persons involved in narcotics trafficking activities.  Accordingly, based upon my experience and training, consultation with other law enforcement

6

1  officers experienced in narcotics trafficking investigations, and all the facts and
2  opinions set forth in this affidavit, I believe that information relevant to the narcotics
3  smuggling activities of GARCIA, such as telephone numbers, made and received calls,
4  contact names, electronic mail (e-mail) addresses, appointment dates, messages,
5  pictures and other digital information are stored in the memory of the **Target Device**.

6      20.    Based on my training and experience along with other law enforcement
7  officers' training and experience, I know that narcotics trafficking activities entail
8  intricate planning to successfully evade detection by law enforcement.    In my
9  professional experience and in the professional experience of other agents with whom
10  I have spoken, this requires planning and coordination in the weeks and often months
11  prior to the event.  For example, drug trafficking organizations (DTOs) recruit, evaluate,
12  and supply load drivers with vehicles and phones, and drug smugglers are often asked
13  to cross a vehicle several times to establish a pattern.  Additionally, co-conspirators are
14  often unaware of the subject's arrest and will continue to attempt to communicate with
15  the subject after the arrest to determine the whereabouts of their valuable cargo.  This
16  communication, both prior to, during and after the event is often
17  accomplished/attempted via cellular telephone communication(s).    Therefore, I
18  respectfully request permission to search the **Target Device** for items listed in
19  Attachment B beginning on November 4, 2017, up to and including February 5, 2018.

20                                        **METHODOLOGY**

21      21.    It is not possible to determine, merely by knowing the cellular/mobile
22  telephone's make, model and serial number, the nature and types of services to which
23  the device is subscribed and the nature of the data stored on the device. Cellular/mobile
24  devices today can be simple cellular telephones and text message devices, can include
25  cameras, can serve as personal digital assistants and have functions such as calendars
26  and full address books and can be mini-computers allowing for electronic mail services,
27  web services and rudimentary word processing.    An increasing number of
28  cellular/mobile service providers now allow for their subscribers to access their device

over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular/mobile telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular/mobile telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

22. Following the issuance of this warrant, I will collect the **Target Device** and subject them to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

23. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

## PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

24. Other than as described above, the United States has not attempted to obtain this information by other means.

//

//

//

**CONCLUSION**

25.   Based on all of the facts and circumstances described above, there is probable cause to conclude that GARCIA used the **Target Device** to facilitate violations of 21 U.S.C. §§ 952, 960, and 963.

26.   Because the **Target Device** was promptly seized during the investigation of GARCIA's smuggling activities and has been securely stored, there is probable cause to believe that evidence of illegal activities committed by GARCIA continues to exist on the **Target Device**.  As stated above, I believe that the date range for this search is from November 4, 2017 to February 5, 2018.

27.   WHEREFORE, I request that the court issue a warrant authorizing law enforcement agents and/or other federal and state law enforcement officers to search the items described in Attachment A, and seize items listed in Attachment B, using the methodology described above.

I swear the foregoing is true and correct to the best of my knowledge and belief.

_____
Joseph Mahe
Special Agent

Subscribed and sworn to before me this ___22___ day of March, 2018.

_____
HONORABLE BARBARA L. MAJOR
United States Magistrate Judge